| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|
| UNITED STATES OF AMERICA v. | DOCKET NO. |
| JOHN SILAH | MAGISTRATE'S CASE NO. 10- **10-2556M** |

Complaint for violation of Title 18, United States Code, Section 1204(a).

| NAME OF MAGISTRATE JUDGE HONORABLE SUZANNE H. SEGAL | UNITED STATES MAGISTRATE JUDGE | LOCATION Los Angeles County, CA |
|---|---|---|
| DATE OF OFFENSE Beginning on or about June 23, 2008 and continuing through on or about October 15, 2010 | PLACE OF OFFENSE Los Angeles, CA | ADDRESS OF ACCUSED (IF KNOWN) FILED CLERK, U.S. DISTRICT COURT OCT 15 2010 CENTRAL DISTRICT OF CALIFORNIA DEPUTY |

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE VIOLATION:

Beginning on or about June 23, 2008 and continuing through on or about October 15, 2010, within the Central District of California, defendant JOHN SILAH knowingly violated Title 18, United States Code, Section 1204(a).

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:
(See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE:

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT Dario Duarte |
|---|---|
| | OFFICIAL TITLE SPECIAL AGENT -Federal Bureau of Investigation (FBI) |

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE(1) SUZANNE H. SEGAL | DATE October 15, 2010 |
|---|---|

1) See Federal Rules of Criminal Procedure rules 3 and 54.
AUSA: J. Rhoades

## AFFIDAVIT

I, DARIO DUARTE, being duly sworn, declare as follows:

### INTRODUCTION

1. I am a Special Agent of the Federal Bureau of Investigation ("FBI"), and have been so employed since June 2004. I am assigned to the Los Angeles Field Office-Violent Crimes Squad, which includes the investigation of kidnappings and parental abductions.

2. This affidavit is made in support of a criminal complaint charging GEORGE SILAH and JOHN SILHAH with violations of Title 18, United States Code, Section 1204(a), International Parental Kidnapping.

3. The information in this affidavit is based on my personal participation in this investigation and knowledge obtained from investigative reports generated by local and federal law enforcement officials, my discussions with these officers, and from consultation with other experienced investigators. This affidavit is intended to show that sufficient probable cause exists for the requested complaint and arrest warrants, and it does not purport to set forth all of my knowledge of or investigation into this matter.

### THE INVESTIGATION

4. The Los Angeles Police Department ("LAPD") and the Federal Bureau of Investigation, Los Angeles ("FBI") are jointly

1

investigating the abduction of Alexander Zaven Silah (date of birth XX/XX/1996) and Zaven Philip Silah (date of birth XX/XX/1999), by GEORGE SILAH, their biological father. In addition, LAPD and FBI are investigating the abduction of Greg Alexander Silah (date of birth XX/XX/1998), by JOHN SILHAH, his biological father.

5. GEORGE SILAH and JOHN SILAH are brothers, both with ties to the Armenian community in Syria. In addition to the victim children, GEORGE SILAH and JOHN SILAH are believed to be traveling with GEORGE SILAH's girlfriend, Gayane Dobadzhyan, and her brother, Levon Dobadzhyan.

6. The following information was derived from a review of Los Angeles Police Department Investigative Report DR#08-14 20045:

    a. Zanni Meguerian ("Meguerian"), the mother of Alex and Zaven Silah, was granted physical custody of her children after her divorce from GEORGE SILAH, while GEORGE SILAH was granted joint/legal custody of these children. The divorce took place in approximately March 2006.

    b. On June 23, 2008, Meguerian drove Alex and Zaven to GEORGE SILAH's residence, located at 7371 W. 81st Street, Los Angeles, California, where GEORGE SILAH resides with his brother, JOHN SILAH. Meguerian took Alex and Zaven Silah to GEORGE SILAH's residence so that the boys could spend time with GEORGE

2

SILAH during their summer vacation.

c.  On July 2, 2008, at GEORGE SILAH's request, Meguerian brought copies of Alex and Zaven's birth certificates to GEORGE SILAH after he informed Meguerian they were needed so that Alex and Zaven could board a Disney cruise ship in Florida on a vacation that GEORGE SILAH had purportedly planned. GEORGE SILAH told Meguerian that this Disney cruise ship was scheduled to embark on July 6, 2008. He also stated that he planned to take the children to Big Bear, California prior to the cruise for the 4th of July holiday, along with his brother, JOHN SILAH and JOHN SILAH's son, Greg.

d.  According to the information that GEORGE SILAH provided to Meguerian, he was supposed to return to Los Angeles from Big Bear, California on July 5, 2008 with Alex and Zaven Silah, prior to flying to Florida for the Disney cruise. However, GEORGE SILAH failed to show up at the appointed time in Los Angeles, and Meguerian has not seen or spoken to GEORGE SILAH, JOHN SILAH, or her sons since July 2, 2008.

e.  At the request of the Los Angeles Police Department, the Brevard County Sheriff's Department in Florida checked the manifest for the Disney cruise ship that GEORGE SILAH told Meguerian that he was going to board with his sons and found that neither GEORGE SILAH, Alex Silah, nor Zaven Silah boarded the cruise ship.

7. The following information was derived from a review of Los Angeles Police Department Investigative Report DR#08-14 20046:

    a. Christine Jeanbart ("Jeanbart"), the mother of Greg Silah, was granted physical custody of her son after her divorce from JOHN SILAH, while JOHN SILAH was granted joint/legal custody of Greg Silah. The divorce occurred in approximately October 2000.

    b. On June 23, 2008, at approximately 1000 hours, JOHN SILAH arrived at Jeanbart's home and picked up Greg Silah pursuant to terms of the custody order concerning summer vacations. This was the last time Jeanbart saw Greg Silah, who, by agreement, was supposed to be returned to Jeanbart by JOHN SILAH on July 6, 2008.

8. On July 23, 2008, during an ex parte hearing at the Los Angeles Superior Court, the Honorable Frederick Shaller revoked all visitation privileges of GEORGE SILAH and JOHN SILAH, and he awarded immediate, sole custody of Alex Silah, Zaven Silah, and Greg Silah to the children's respective mothers, Meguerian and Jeanbart. In addition, Judge Shaller ordered the Los Angeles District Attorney's office to open an investigation into the disappearance of the Silah children, and further ordered the District Attorney's Office to locate, retrieve, and return the minor children to their mothers.

4

9. Subsequently, the following warrants were issued for the arrests of GEORGE SILAH and JOHN SILAH for violations of Section 278.5 of the California Penal Code (Parental Abduction):

    a.   LACBA34428601 for GEORGE SILAH

    b.   LACBA34428602 for JOHN SILAH

10. According to Meguerian and Jeanbart, Both GEORGE SILAH and JOHN SILAH are aware of the conditions of their respective custody agreements, and the ramifications of violating those conditions.

11. The Los Angeles County District Attorney's Office has agreed to extradite GEORGE SILAH and JOHN SILAH in the event they are apprehended, and along with the Los Angeles Police Deparment, has asked for the FBI's assistance in locating the two men and returning them to California.

12. As of the date of this affidavit, Alex, Zaven, and Greg Silah have not been returned to their mothers, Meguerian and Jeanbart, nor have GEORGE SILAH nor JOHN SILAH returned to their homes in Los Angeles.

13. According to Meguerian, in early July 2008, after GEORGE SILAH and JOHN SILAH failed to return their children to Meguerian and Jeanbart as required, Meguierian and Jeanbart entered GEORGE SILAH and JOHN SILAH's home at 7371 W. 81st Street, Los Angeles, California to search for clues as to their whereabouts. Upon entering their home, Meguerian and Jeanbart

found the house uninhabitable and in disarray, with papers and belongings strewn everywhere. Meguerian and Jeanbart believed this indicated that GEORGE SILAH, JOHN SILAH, and their children left in haste. To date, all attempts to contact GEORGE SILAH and JOHN SILAH, as well as their children, by telephone or by e-mail, have proven unsuccessful.

14. I learned the following information from Special Agent James S. Davidson ("SA Davidson") of the Los Angeles FBI who was the initial case agent:

    a. After their disappearance, it was learned that GEORGE SILAH and JOHN SILAH were alleged to have defrauded individuals in California as described below. It is believed that GEORGE SILAH and JOHN SILAH may thus wish to avoid encountering these people and, as a result, may not return to California.

    b. On August 29, 2008, SA Davidson interviewed George Oganesyan, who advised that he was defrauded out of over $200,000 by GEORGE SILAH, JOHN SILAH, and several of their associates, including Gayane Dobadzhyan, Levon Dobadzhyan, Vahan Dobadzhyan, and Miguel Angel Melgar. They persuaded Oganesyan to allow them access to his business accounts, financial assets, and credit cards so that they could repair his credit and sell his business for a higher profit. GEORGE and JOHN SILAH kept the proceeds on new loans issued under Oganesyan's name, and purportedly repeated

this scheme with more than fifteen other victims.

    c.  On September 12, 2008, SA Davidson interviewed Garapet Petrosyan, Gayane Dobadzhyan's ex-husband, who stated the following:

    i.  Gayane and Petrosyan divorced after Gayane became involved with GEORGE SILAH on a business and romantic level.

    ii.  Gayane, Levon, and Vahan Dobadzhyan all flew into Greece in early July 2008, at approximately the same time as GEORGE SILAH and JOHN SILAH left the United States with their sons. Based on Petrosyan's knowledge of the dynamics of this group, he believes that Gayane and GEORGE SILAH are most likely together. Based on Petrosyan's knowledge of GEORGE SILAH and JOHN SILAH's fraudulent activities, Petrosyan believes the group fled California to avoid detection by their victims.

    15.  On October 2, 2008, Officer Patrick Montes of LAPD and SA Davidson interviewed Miguel Angel Melgar, who admitted to playing a minor role in the fraudulent activities of GEORGE SILAH and JOHN SILAH. Melgar stated that in the months prior to their disappearance, he observed GEORGE SILAH and JOHN SILAH wearing bullet-proof vests while in their homes because they were fearful of retaliation from the victims of their fraudulent activities. Melgar also stated that GEORGE SILAH and JOHN SILAH often spoke of leaving California for Canada.

16. In the course of this investigation, "TECS" records were examined, which memorialize the travels of individuals from the United States to countries abroad. It was discovered by reviewing these records that Alexander and Lucy Silah, the parents of GEORGE SILAH and JOHN SILAH, left the United States on June 25, 2008, and flew to Syria. Alexander and Lucy Silah had been residing with GEORGE SILAH and JOHN SILAH at 7371 W. 81st Street, Los Angeles, California, up until their departure. There are no records that either has returned to the United States since departing on June 25, 2008. According to Meguerian, Alexander and Lucy Silah are close to their children and grandchildren and would want to be in a position to visit them.

17. Based on my training and experience in abduction cases of this nature, I believe the departure from California of Alexander and Lucy Silah in the weeks just prior to the disappearance of GEORGE SILAH and JOHN SILAH with their sons is a strong indicator that GEORGE SILAH and JOHN SILAH are no longer residing in California.

18. Since the victims' disappearance in July 2008, the LAPD and FBI have worked to locate the victims and GEORGE SILAH and JOHN SILAH. This investigation has included pursuing leads in Guatemala, Turkey, Canada, and Mexico. Recent developments are detailed below.

19. Through a confidential source, it was revealed that Lucy and Alexander Silah, the victims' grandparents, traveled from their home in Syria to Turkey, and then to Greece in June 2010. The source indicated that Lucy and Alexander Silah were purportedly visiting their grandchildren in Greece.

20. The FBI requested assistance from the Hellenic National Police ("HNP") to locate GEORGE SILAH, JOHN SILAH, or their sons. HNP has provided information to the FBI, as detailed below, but has not in every case indicated how the information was collected or the nature of the source:

   a. On October 10, 2010, the HNP reported that they had confirmed that the victims' grandparents, Lucy and Alexander Silah, are residing in a suburb of Athens, Greece called Paleo Phaliro. The HNP has learned that Lucy and Alexander Silah have been using Dutch "SIM" cards in their cell phones. The phones themselves are issued by Greek telephone providers. HNP has also become aware that the grandparents are attempting to obtain fraudulent documents in Syria, possibly so that they can depart Greece. HNP opined that the grandparents are most likely attempting to depart Greece, possibly for the Netherlands.

   b. HNP advised the FBI that HNP has learned that JOHN SILAH, GEORGE SILAH, and Gayane Dobadzhyan are using cellular handsets issued by Dutch telephone providers. HNP has informed the FBI that HNP believes GEORGE SILAH and JOHN SILAH live

9

together with all three children and Gayane Dobadzhyan at the same residence in Holland. HNP stated that GEORGE SILAH is currently using alias "Aram" LNU, victim Alex Silah utilizes alias "Armen" LNU, victim Zaven Silah utilizes alias "Ara" LNU, and victim Greg Silah utilizes the alias "Aro" LNU. Gayane Dobaddzhyan is purportedly utilizing the alias Jacqueline Marous or Marouch (phonetic). JOHN SILAH is also believed to reside with a female name "Anna" LNU, and has frequent dealings with and individual named Hovspyan who also resides in Holland. At this time, it is unknown if JOHN SILAH is utilizing an alias. It has been reported that all three victim children attend school in the Netherlands.

    c. According to HNP, both subects, JOHN SILAH and GEORGE SILAH, have been in contact with a Dutch attorney in an attempt to legitimize their stay in the Netherlands. They are expecting an update from the attorney as soon as October 26, 2010.

    21. Recently, I have been in communication with the FBI Assistant Legal Attache in Brussels, who is working with Dutch authorities to determine the exact whereabouts of JOHN SILAH, GEORGE SILAH, and the victim children.

**CONCLUSION**

    22. Based on the foregoing, and my experience in conducting fugitive and kidnaping investigations, I believe there is

probable cause to believe that GEORGE SILAH and JOHN SILAH have fled the United States with their sons who are under the age of 16, and for whom they do not have custodial rights, and in doing so, have violated Title 18, United States Code, Section 1204(a).

/s/
_____
Dario Duarte
Special Agent, FBI

Sworn and subscribed to before me
on this ___15___ day of October 2010

SUZANNE H. SEGAL
_____

UNITED STATES MAGISTRATE JUDGE

11